FILED

2019 Nov-13  PM 02:29
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

|  |  |  |
|---|---|---|
| **LARRY DONALD JOHNSON**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 6:17-cv-00557-LSC |
| v. | ) | |
| | ) | |
| **STEVEN YARBROUGH**, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF OPINION

Before the Court is Defendants', Steven Yarbrough ("Officer Yarbrough") and the Town of Parrish (collectively "Defendants"), motion for partial judgment on the pleadings. (Doc. 27.) Plaintiff Larry Donald Johnson alleges violations of the Fourth Amendment pursuant to 42 U.S.C. § 1983, as well as state-law claims for false imprisonment, conversion, theft, and negligent practices. Defendants have moved for judgment on the pleadings regarding Plaintiff's § 1983 Fourth Amendment claim

for unreasonable search and seizure and state-law claim for false imprisonment. For the reasons stated below, Defendants' motion for partial judgment on the pleadings is due to be granted.[1]

## I. Background[2]

### A. Facts

Plaintiff is a resident of the Town of Parrish, which is situated in Walker County, Alabama. Walker County is a dry county. Under Alabama Code § 28-4-201, *et. seq.*, it is unlawful to sell, offer to sell, or personally possess more than three quarts of liquor and a case of beer, or three quarts of wine and a case of beer, in such counties. On August 20, 2014, Officer Yarbrough "caused or induced" DeBrian Sudduth ("Magistrate Sudduth"), a magistrate for the Town of Parrish, to sign two warrants for Plaintiff's arrest for having unlawfully possessed and sold alcoholic beverages without a license. (Doc. 1 Ex. A at ¶¶ 11–12.) Magistrate Sudduth set bond for each violation at $500.00 cash, and then signed warrants purportedly "without a

---

[1] Because Defendants have not moved for dismissal of Count III ("Conversion, Theft, and Negligent Practices Against Defendant The Town of Parrish") of Plaintiff's Complaint, said claim remains pending.

[2] The Court recounts the following facts as taken from Plaintiff's Complaint. The "facts alleged in the complaint [are] accepted as true and viewed in the light most favorable to the nonmoving party," *i.e.*, the Plaintiff. *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008).

complaint, affidavit, or other written statement made under oath." (*Id.* at ¶¶ 12–13.)

Officer Yarbrough then executed the warrants despite knowing that he had obtained the warrants "without a complaint, affidavit, or other written statement made under oath." (*Id.* at ¶¶ 13–14.) On August 20, 2014, at 10:28 A.M., pursuant to the warrants, Officer Yarbrough stopped, detained, arrested, and transported Plaintiff to the Parrish Jail. (*Id.* at ¶ 14.) Plaintiff paid the Parrish town clerk a $1,000.00 cash bond to secure his release. (*Id.* at ¶ 15.) Afterward, Plaintiff was required to return to court to answer the charges against him to avoid suspension of his driver's license and forfeiture of his cash bond. (*Id.* at ¶ 16.) On October 2, 2014, the Municipal Court of Parrish acquitted Plaintiff of all charges. (*Id.* at ¶ 17.) Upon acquittal, Plaintiff made demand to the city clerk for the return of his $1000.00 cash bond. (*Id.* at ¶ 18.) However, the Town of Parrish had "impermissibly spent [Plaintiff's] money, and would need time to get the money up." (*Id.*) As a result, Plaintiff was required to wait weeks before his cash bond was returned to him in full. (*Id.* at ¶ 19.)

## B. Procedural History

Plaintiff initially filed suit against Officer Yarbrough, the Town of Parrish, and Magistrate Sudduth in the Circuit Court of Walker County, Alabama. Magistrate

Sudduth timely removed this action to federal court on April 7, 2017. (Doc. 1.) On April 14, 2017, Magistrate Sudduth filed a motion to dismiss, citing judicial immunity. (Doc. 3.) Although the Court first granted in part and denied in part Magistrate Sudduth's motion to dismiss, it later dismissed Plaintiff's claims against Magistrate Sudduth on the ground of absolute judicial immunity on August 3, 2018. (*See* Docs. 16 & 23.) The Court's scheduling order set a deadline for Plaintiff to add new causes of action by March 29, 2019. (Doc. 26.) On March 1, 2019, Officer Yarbrough and the Town of Parrish filed the present motion for judgment on the pleadings. (Doc. 27.) Plaintiff filed a response brief on April 4, 2019. (Doc. 30.) In his response brief, Plaintiff requested leave to amend his Complaint to state a malicious prosecution claim. (*Id.*)

## II. Standard

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001). "In determining whether a party is entitled to judgment on the pleadings, [the Court] accept[s] as

true all material facts alleged in the non-moving party's pleading . . . view[ing] those facts in the light most favorable to the non-moving party." *Perez v. Wells Fargo, N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014). A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss for failure to state a claim. *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018). Accordingly, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## III.    Discussion

### A. Plaintiff's Implied Motion for Leave to Amend his Complaint

Before it can rule on Defendants' motion, the Court must first determine whether to grant leave for Plaintiff to amend his Complaint. Count One of Plaintiff's Complaint asserts a cause of action under the Fourth Amendment pursuant to § 1983

for unreasonable search and seizure. In prior submissions to this Court, Plaintiff has referred to this claim as a claim of false arrest.[3] However, the fact that Officer Yarbrough obtained two warrants prior to arresting Plaintiff belies any claim for false arrest. *See Heck v. Humphrey*, 512 U.S. 477, 484 (1994) ("[U]nlike the related cause of action for false arrest or imprisonment, [malicious prosecution] permits damages for confinement imposed pursuant to legal process."); *Carter v. Gore*, 557 F. App'x 904, 906–07 (11th Cir. 2014) ("The issuance of a warrant—even an invalid one as [Plaintiff] alleges was issued here—constitutes legal process, and thus, where an individual has been arrested pursuant to a warrant, his claim is for malicious prosecution rather than false arrest.").

Plaintiff, in his response to Defendants' motion for partial judgment on the pleadings, asks the Court either to (1) grant Plaintiff leave to amend his Complaint and re-characterize his § 1983 Fourth Amendment claim as a claim for malicious prosecution; or (2) construe his unreasonable search and seizure claim under a malicious prosecution framework.

District courts are required to enter a scheduling order that "limit[s] the time

---

[3]     In his Response in Opposition to Magistrate Sudduth's Motion to Dismiss, Plaintiff claimed that "[Defendants] infringed upon [Plaintiff's] Fourth Amendment rights to be free from unreasonable searches and seizures by causing him to be falsely arrested and detained in jail without even arguable probable cause for which relief can be granted." (Doc. 8 at 18.)

to join other parties [and] amend the pleadings." Fed. R. Civ. P. 16(b)(3). The scheduling order "controls the course of the action unless the court modifies it," Fed. R. Civ. P. 16(d), and "may be modified only for good cause and with the judge's consent," Fed. R. Civ. P. 16(b)(4). This good cause standard precludes modification unless the schedule "cannot be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16, Advisory Committee's Note to 1983 Amendment.

According to the scheduling order in the instant case, Plaintiff could not add causes of action after March 29, 2019. (Doc. 26.) Plaintiff's response requesting leave to amend was filed on April 4, 2019. As a result, Plaintiff's request falls outside of the Court's scheduling order deadline for amendments, and Plaintiff must demonstrate good cause for his delay in seeking to amend his Complaint.

Plaintiff has not demonstrated good cause for his delay. This case has been pending for over two years. During this time, Plaintiff has already litigated his Fourth Amendment claim under a search and seizure theory against Magistrate Sudduth, who has been dismissed on the grounds of judicial immunity. Although Magistrate Sudduth was dismissed in August 2018, Plaintiff did not request leave to amend his Complaint until April 2019, a delay of more than eight months. Plaintiff has not attempted to make any showing to this Court as to why he failed to seek leave to

amend despite having ample time to do so. As a result, Plaintiff has failed to show good cause as required to amend his Complaint at this late stage.

Furthermore, the Court notes that its decision to deny Plaintiff's requested amendment does not impact the outcome of this case. To establish a § 1983 false arrest claim, a plaintiff must show that the arrest occurred without a warrant or probable cause. *See Herren v. Bowyer*, 850 F.2d 1543, 1547 (11th Cir. 1988). To establish a § 1983 malicious prosecution claim, a plaintiff must prove two things: (1) the elements of the common law tort of malicious prosecution; *and* (2) a violation of his Fourth Amendment rights to be free from unreasonable seizures. *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256 (11th Cir. 2010). In Alabama, the common-law elements of malicious prosecution are: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and *without probable cause*; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Wood v. Kesler*, 323 F.3d 872, 881–82 (11th Cir. 2003) (citing *Delchamps, Inc. v. Bryant*, 738 So. 2d 824, 831–32 (Ala. 1999) (emphasis added)).

Regardless of whether a warrant issued, Plaintiff would need to prove that Officer Yarbrough lacked probable cause to prevail on either a false arrest or a malicious prosecution claim. As discussed below, Plaintiff's Complaint fails to allege

facts plausibly indicating a lack of probable cause for his arrest. Plaintiff's attempt to amend his cause of action thus would have no effect on the Court's decision.

Accordingly, Plaintiff will not be granted leave to amend his Complaint at this late stage to add factual allegations that may support a malicious prosecution claim.

### B. Plaintiff's § 1983 Claim Against Officer Yarbrough[4]

"Qualified immunity protects municipal officers from liability in § 1983 actions as long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1291 (11th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "may be raised and addressed on a motion to dismiss, and will be granted if the complaint 'fails to allege the violation of a clearly established constitutional right.'" *Smith ex rel. Smith v. Siegelman*, 322 F.3d 1290, 1294 (11th Cir. 2003) (quoting *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001)).

"Under qualified immunity analysis, the public official must first prove that

---

[4] Plaintiff's Complaint asserts that Officer Yarbrough is sued in both his individual and official capacities, presumably as to all counts against him. A claim against a public servant in his official capacity "imposes liability on the entity that he represents provided, of course the public entity received notice and an opportunity to respond." *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985). To the extent that either Count I or Count II is brought against Officer Yarbrough in his official capacity, such claim is due to be dismissed as redundant with the identical claims brought against the Town of Parrish.

he was acting within the scope of his discretionary authority when the allegedly unconstitutional acts took place." *Storck v. City of Coral Springs*, 354 F.3d 1307, 1314 (11th Cir. 2003). If the official is unable to prove that he was acting within his discretionary authority, he is not entitled to qualified immunity. *Lumley v. City of Dade City*, 327 F.3d 1186, 1194 (11th Cir. 2003).

To determine whether Officer Yarbrough acted within his discretionary authority, the Court must ask whether his actions "(1) were undertaken 'pursuant to the performance of his duties,' and (2) were 'within the scope of his authority.'" *Dang ex rel. Dang v. Sheriff, Seminole Cty.*, 871 F.3d 1272, 1279 (11th Cir. 2017) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988)). "In applying each prong of this test, [the court] look[s] to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). "In other words, 'a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, *the outer perimeter* of an official's discretionary duties.'" *Mikko v. City of Atlanta, Ga.*, 857 F.3d 1136, 1144 (11th Cir. 2017) (quoting

*Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) (emphasis added)).

Here, it is undisputed that Officer Yarbrough's actions of seeking arrest warrants and making arrests are proper exercises of his discretionary authority. At the time of Plaintiff's arrest, Officer Yarbrough served as a police officer for the Town of Parrish. Making arrests and seeking warrants to make arrests are inherent to the position of police officer. Accordingly, if done for a proper purpose, Officer Yarbrough's alleged actions would fall within the scope of his discretionary authority. Therefore, Officer Yarbrough has met his initial burden for establishing a qualified immunity defense.

"Once a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003). "To overcome qualified immunity, the plaintiff must satisfy a two-prong test; he must show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman*, 370 F.3d at 1264 (citing *Wilson v. Layne*, 526 U.S. 603, 609 (1999)).

"For the law to be 'clearly established,' case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious

to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000). "[I]n the absence of fact-specific case law, the plaintiff may overcome the qualified immunity defense when the preexisting general constitutional rule applies 'with obvious clarity to the specific conduct in question,' and it must have been 'obvious' to a reasonable police officer that the pertinent conduct given the circumstances must have been unconstitutional at the time." *Vinyard v. Wilson*, 311 F.3d 1340, 1352 (11th Cir. 2002) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

Here, the Complaint alleges that Officer Yarbrough violated Plaintiff's Fourth Amendment rights when he "caused or induced" Magistrate Sudduth to "sign two warrants for the arrest of [Plaintiff] without a complaint, affidavit, or other written statement made under oath." (Doc. 1 Ex. 2 at ¶ 11.) The Complaint further alleges that Officer Yarbrough knew of this deficiency and that he knowingly arrested Plaintiff "without a valid warrant or probable cause." (*Id.* at ¶ 25.)

The law is well-established that an arrest without a warrant or probable cause violates the Fourth Amendment. *Herren*, 850 F.2d at 1547. Therefore, if Plaintiff's Complaint has adequately alleged such deficiencies in his arrest, Plaintiff can overcome Officer Yarbrough's qualified immunity defense.

Alabama law provides a clear procedure for obtaining an arrest warrant without a formal indictment. First, an officer makes a "complaint . . . to a judge or magistrate that an offense has . . . been committed." Ala. Code (1975) § 15-7-2(a). The judge or magistrate must then take the sworn depositions of the complainant and any witnesses with knowledge of the alleged crime. *See id.* The judge or magistrate then determines "from the complaint, from any affidavits filed with the complaint, and from any testimony taken" whether there is probable cause to believe that a crime has been committed and whether the subject of the complaint committed it. Alabama Rule of Criminal Procedure 2.4. If the judge or magistrate is "reasonably satisfied" that there is probable cause, the judge or magistrate must issue a warrant of arrest. Ala. Code (1975) § 15-7-3.

Plaintiff's Complaint adequately alleges that Officer Yarbrough lacked a *valid* warrant at the time he arrested Plaintiff. The Complaint alleges that Officer Yarbrough did not present a complaint, affidavit, or other written statement to Magistrate Sudduth when seeking the warrants. The Complaint further alleges that Officer Yarbrough knew that the warrants he thereby obtained were unlawful, yet he executed them nonetheless. If these allegations are true, then Officer Yarbrough knowingly failed to follow the proper procedure for obtaining a warrant in Alabama.

Based on Plaintiff's Complaint, the Court will therefore assume that Officer Yarbrough made a "warrantless" arrest of Plaintiff. *Cf. Groh v. Ramirez*, 540 U.S. 551, 558 (2004) (regarding as "warrantless" a search conducted pursuant to warrant that was "obviously deficient").

Even without a valid warrant, no constitutional violation would occur unless Officer Yarbrough lacked probable cause to arrest Plaintiff. "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Probable cause requires "facts and circumstances 'sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.'" *Gerstein v. Pugh*, 420 U.S. 103, 862 (1975) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

Further, an officer asserting qualified immunity need only have *arguable* probable cause to avoid liability. *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1257 (11th Cir. 2010). "Arguable probable cause exists where 'reasonable officers in the circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest the Plaintiff.'" *Id.* (quoting *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004)). Therefore, Plaintiff's

Complaint must assert factual allegations that, if assumed true, would plausibly indicate that no reasonable officer could have believed there was probable cause for an arrest.

The facts alleged in Plaintiff's Complaint fall far short of establishing that Officer Yarbrough lacked actual probable cause, much less arguable probable cause, to arrest Plaintiff. The Complaint alleges that Officer Yarbrough "knew or should have known that he unlawfully stopped, detained, and arrested Plaintiff without a valid warrant or probable cause." (Doc. 1 Ex. 2 at ¶ 25.) Yet apart from the arrest itself, the Complaint does not allege any interactions between Plaintiff and Officer Yarbrough. Nor does the Complaint allege that Officer Yarbrough fabricated the crime for which he arrested Plaintiff. Indeed, the Complaint does not even clearly allege that Plaintiff was innocent. Plaintiff has thus failed to allege sufficient facts to overcome qualified immunity.

Accordingly, Officer Yarbrough is entitled to judgment on the pleadings with respect to Plaintiff's § 1983 claim.

## C. Plaintiff's False Imprisonment Claim Against Officer Yarbrough

Plaintiff also brings a state-law claim of false imprisonment against Officer Yarbrough. Under Alabama law, false imprisonment "consists in the unlawful

detention of the person of another for any length of time whereby he is deprived of his personal liberty." Ala. Code (1975) § 6-5-170.

Plaintiff's claim for false imprisonment must fail, because he has not pleaded an "unlawful detention." To be sure, the Court has already explained that Plaintiff's Complaint has adequately alleged a warrantless arrest. However, Alabama law permits an officer to arrest a person without a warrant "[i]f a public offense has been committed or a breach of the peace threatened in the presence of the officer." Ala. Code (1975) § 15-10-3(a)(1). And as discussed above, Plaintiff's Complaint fails to allege any specific facts allowing a plausible inference that Officer Yarbrough lacked probable cause to believe that Plaintiff had committed a crime in his presence. Therefore, Plaintiff's false imprisonment claim is due to be dismissed.

But even if Plaintiff had adequately pleaded an unlawful detention, Officer Yarbrough would still be entitled to "discretionary function immunity." Under Alabama law, discretionary function immunity shields officers "from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." Ala. Code (1975) § 6-5-338(a). Such immunity extends to the discretionary actions of municipal police officers. *See Sheth v. Webster*, 145 F.3d 1231, 1236 (11th Cir. 1998).

The Alabama Supreme Court has established a burden-shifting framework in cases where an officer raises discretionary function immunity as a defense. *Grider*, 618 F.3d at 1255–56.[5] Within this framework, the officer bears the initial burden of showing that: (1) he was a peace officer on the date of the incident, (2) he was performing law enforcement duties at the time, and (3) he was exercising judgment or discretion when doing so. *See Howard v. City of Atmore*, 887 So. 2d 201, 204 (Ala. 2003). The burden then shifts to the plaintiff to show that (1) the Constitution or laws of the United States or Alabama foreclose immunity, or (2) the officer "acted willfully, maliciously, fraudulently, in bad faith, beyond his legal authority, or under a mistaken interpretation of law." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 740–41 (11th Cir. 2010) (citing *Borders v. City of Huntsville*, 875 So. 2d 1168, 1178 (Ala. 2003)). However, "the Alabama Supreme Court has applied the same 'arguable probable cause' standard utilized in . . . federal qualified immunity cases for determining whether a city police officer receives state-agent immunity for his role in an arrest." *Id.* at 741 (citing *Borders*, 875 So. 2d at 1180). Therefore, unless the pleadings indicate a lack of arguable probable cause, the plaintiff will be unable

---

[5]     "This Court has established a 'burden-shifting' process when a party raises the defense of State-agent immunity." *Ex parte Estate of Reynolds*, 946 So. 2d 450, 452 (Ala. 2006). "The restatement of State-agent immunity [as set out in *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000)], now governs the determination of whether a police officer is entitled to [discretionary function immunity]." *Ex parte City of Tuskegee*, 932 So. 2d 895, 904 (Ala. 2005).

to meet his burden.

Based on the facts alleged in the pleadings, Officer Yarbrough can meet his initial burden. As noted above, the parties do not dispute that Officer Yarbrough served as a police officer for the Town of Parrish at the time of the arrest. *Borders*, 875 So. 2d at 1178 ("As a police officer, [the defendant] qualifies as a peace officer for purposes of [discretionary function immunity]."). Furthermore, the Alabama Supreme Court has held that arrests and attempted arrests by police officers qualify as discretionary functions. *Swan v. Hueytown*, 920 So. 2d 1075, 1079 (Ala. 2005) (noting that *Cranman*, 792 So. 2d at 405, expressly provides immunity for officers enforcing criminal laws of Alabama). Therefore, the burden shifts to Plaintiff to show that Officer Yarbrough is not entitled to discretionary function immunity.

Plaintiff cannot meet that burden. As discussed above, Plaintiff's Complaint fails to allege facts sufficient to justify a plausible inference that Officer Yarbrough lacked arguable probable cause to seek and execute the arrest warrants. Accordingly, the Court finds that Officer Yarbrough is entitled to discretionary function immunity under Alabama law, and judgment on the pleadings is due to be granted as to this claim.

**D. Plaintiff's § 1983 Claim Against the Town of Parrish**

The Court now turns to Plaintiff's § 1983 claim against the Town of Parrish. As discussed above, Plaintiff has failed to plead an unlawful arrest by Officer Yarbrough. Because Plaintiff does not adequately allege that an agent of the Town of Parrish violated his constitutional rights, Plaintiff's § 1983 claim against the Town of Parrish must also fail. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point."). Regardless, the Court will assume an unlawful arrest by Officer Yarbrough and examine whether Plaintiff has adequately pleaded a § 1983 claim against the Town of Parrish.

The actions of employees generally do not subject a municipality to liability in § 1983 actions. *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) ("[W]e conclude that a municipality cannot be held liable *solely* because it employs a tort feasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). Instead, municipalities may be held liable under § 1983 only where an employee's alleged violation of another's constitutional rights arises from the "execution of a government's policy or custom, whether made

by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id.* at 694.

To establish a municipality's liability under § 1983, "a plaintiff must show: (1) that his constitutional rights were violated, (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right, and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) (citing *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479–80 (11th Cir. 1991)). "A custom is a practice that is so settled and permanent that it takes on the force of law." *Id.* (citing *Monell*, 436 U.S. at 690–91).

Plaintiff's Complaint alleges that the violation of his Fourth Amendment rights resulted from inadequate training of Officer Yarbrough by the Town of Parrish. (Doc. 1 Ex. 2 at ¶ 29.) "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City*

*of Canton*, 489 U.S. at 388. Typically, a plaintiff must show a "pattern of similar constitutional violations by untrained employees" to demonstrate deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 62 (2011). Alternatively, a municipality's failure to train officers "can amount to deliberate indifference when the need for more or different training is obvious . . . and when the failure to train is likely to result in the violation of a constitutional right." *Belcher v. City of Foley*, 30 F.3d 1390, 1397–98 (11th Cir. 1994).

The Complaint fails to allege facts plausibly indicating that any failure to train on the part of Parrish amounted to a policy or custom of the town. Plaintiff does not allege any pattern of similar incidents wherein Parrish police officers unlawfully arrested other individuals in derogation of their Fourth Amendment rights. Nor does Plaintiff allege any circumstances suggesting that the need for training or the risk to constitutional rights was obvious to town officials. Plaintiff's lone allegation of the town's failure to train amounts to a mere conclusory statement. The Complaint thus falls far short of plausibly alleging the deliberate indifference necessary to infer that the failure to train amounted to a policy or custom.

Plaintiff's Complaint also alleges that the violation of his Fourth Amendment rights resulted from a "de facto policy of failing to comply with Fourth Amendment

Standards on the part of the Town of Parrish." (Doc. 1 Ex. 2 at ¶ 29.) But as with Plaintiff's claim of inadequate training, the Complaint fails to provide any facts to evidence this "de facto policy." Thus, the Complaint's lone conclusory statement of policy is insufficient to plausibly state a § 1983 claim against the Town of Parrish.

Finally, Plaintiff argues that Officer Yarbrough is a final policymaker capable of subjecting the Town of Parrish to § 1983 liability. The Supreme Court has held that liability may be imposed on a municipality "for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). Such liability may be premised on a "single illegal act by a municipal officer only when the challenged act may fairly be said to represent official policy, such as when the municipal officer possesses final policymaking authority over the relevant subject matter." *Morro v. City of Birmingham*, 117 F.3d 508, 510 (11th Cir. 1997). In evaluating a motion on the pleadings, a court's function "is not to determine who, in fact, wields final policymaking authority but only to consider whether plaintiff has alleged sufficient facts to withstand the city's motion to dismiss." *Brown*, 923 F.2d at 1480.

Upon examination of the pleadings, neither party has alleged facts indicating that Officer Yarbrough had final policymaking authority in this case. Plaintiff's

Complaint indicates only that Officer Yarbrough was "a police officer employed by the Town of Parrish." (Doc. 1 Ex. 2 at ¶ 7.) Similarly, in Officer Yarbrough's Answer, Officer Yarbrough admitted only that "he was employed as a police officer by the Town of Parrish" at the time of the arrest. (Doc. 10 Ex. B at ¶ 7.) Plaintiff now alleges in his response that Officer Yarbrough served as Chief of Police and was "the de-facto policy maker for the Town of Parrish and possessed the authority to enforce its municipal ordinances as he saw fit." (Doc. 30 at 15.) After scouring the record, the Court can find no reliable indication that Officer Yarbrough served as Chief of Police for the Town of Parrish on the date of Plaintiff's arrest.[6] Therefore, because Officer Yarbrough's actions did not amount to a policy or custom of the town, the Town of Parrish is entitled to judgment on the pleadings as to Plaintiff's § 1983 claim.

### E. Plaintiff's False Imprisonment and Negligent Training and Supervision Claims Against the Town of Parrish

Plaintiff has also pleaded a state-law false imprisonment claim against the Town of Parrish. Specifically, Plaintiff asserts that his false imprisonment was the

---

[6]     The Court acknowledges that, in an affidavit attached to Magistrate Sudduth's renewed motion to dismiss, Sudduth alleged that Officer Yarbrough served as the Town of Parrish's Chief of Police on the date in question. (Doc. 17-1 at 2.). When granting Sudduth's motion, however, this Court "did not consider the disputed declaration." (Doc. 23 at 5 n.4.) The Court again declines to rely upon that disputed declaration.

result of "either a lack of training or supervision or a de facto policy of failing to comply with Fourth Amendment standards on the part of the Town of Parrish." (Doc. 1 Ex. 2 at ¶ 34.) In effect, Plaintiff has pleaded two separate claims: one for negligent training and supervision and one for false imprisonment.

The Court has already explained why Plaintiff has failed to plead an unlawful arrest by Officer Yarbrough. For that reason alone, the Town of Parrish is entitled to judgment on the pleadings as to both the negligent training and supervision claim and the false imprisonment claim. But out of an abundance of caution, the Court will examine both claims on the assumption that Officer Yarbrough made an unlawful arrest.

The Court must first determine whether Plaintiff's negligent training and supervision claim fails as a matter of law. The general consensus among district courts has long been that "Alabama law does not recognize a cause of action against a . . . municipality for negligent supervision/training." *See e.g.*, *Doe v. City of Demopolis*, 799 F. Supp. 2d 1300, 1311 (S.D. Ala. 2011). Alabama Code (1975) § 11-47-190 permits a plaintiff to sue a municipality for the negligence of its employee. However, a municipality's liability under § 11-47-190 is based on the doctrine of respondeat superior. *See City of Lanett v. Tomlinson*, 659 So. 2d 68, 70 (Ala. 1995).

For an employer to be liable under respondeat superior, its employee must first be liable for a tort. *Latham v. Redding*, 628 So. 2d 490, 495 (Ala. 1993) ("If the agent is not liable for any tort, the principal is also absolved."). However, Alabama law does not recognize a cause of action against a supervisory employee for negligent training or supervision. *Ott v. City of Mobile*, 169 F. Supp. 2d 1301, 1315 (S.D. Ala. 2001). As a result, there is no cause of action for negligent training or supervision against a municipality in Alabama. *Id.*

To be sure, the Alabama Supreme Court has recently permitted such a claim to proceed against a municipality in two cases. *See Ex parte City of Midfield*, 161 So. 3d 1158, 1168–69 (Ala. 2014); *Ex parte City of Montgomery*, 99 So. 3d 282, 299 (Ala. 2012). However, the Court agrees with the reasoning of those federal district courts that have continued to hold that Alabama does not recognize such an action. *See, e.g.*, *Hand v. Univ. of Ala. Bd. of Trs.*, 304 F. Supp. 3d 1173, 1182–3 n.7 (N.D. Ala. 2018). In both *City of Midfield* and *City of Montgomery*, the Alabama Supreme Court considered only whether the defendant municipalities had demonstrated that they were immune from suit. *City of Midfield*, 161 So. 3d at 1168–69; *City of Montgomery*, 99 So. 3d at 299. Because neither case involved the threshold question of whether Alabama law permits a negligent training or supervision claim against a municipality,

they cannot be read to approve of such a theory. Accordingly, the Town of Parrish is entitled to judgment on the pleadings with respect to this claim.

As to Plaintiff's false imprisonment claim, the Town of Parrish is entitled to discretionary function immunity. Under Alabama law, discretionary function immunity extends both to police officers and to the municipalities that employ them. Ala. Code (1975) § 6-5-338(b) ("This section is intended to extend immunity only to peace officers *and governmental units* or agencies authorized to appoint peace officers." (emphasis added)); *Ex parte City of Gadsden*, 781 So. 2d 936, 940 (Ala. 2000) ("The plain language of § 6-5-338(b), Ala. Code 1975, extends that discretionary-function immunity to the City."). Thus, provided that discretionary immunity shields a municipal police officer, it will also shield the municipality that employs the officer. *Howard*, 887 So. 2d at 211.

As discussed above, Officer Yarbrough is entitled to discretionary function immunity for Plaintiff's state-law false imprisonment claim. Based on the "plain language" of § 6-5-338(b), said immunity extends to the Town of Parrish as well. *Gadsden*, 781 So. 2d at 940. Accordingly, the Town of Parrish is entitled to judgment on the pleadings as to Plaintiff's false imprisonment claim.

**F. Plaintiff's Remaining State-Law Claim Against the Town of Parrish**

Having disposed of all claims pertinent to Defendants' motion for partial judgment on the pleadings, the Court now turns to Plaintiff's remaining claim for state-law conversion, theft, and negligent practices against the Town of Parrish. Heretofore, the Court has exercised supplemental jurisdiction over this claim based on its original jurisdiction over Plaintiff's § 1983 claim. 28 U.S.C. § 1367(a). Where the district court "has dismissed all claims over which it has original jurisdiction," the court may decline to exercise supplemental jurisdiction over any remaining claims. 28 U.S.C. § 1367(c). The Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004).

In granting Defendants' motion for partial judgment on the pleadings, the Court dismisses Plaintiff's § 1983 claim against both Officer Yarbrough and the Town of Parrish. As a result, there are no remaining claims over which the Court may exercise original jurisdiction. The Court now declines to exercise supplemental jurisdiction over the remaining state-law claim against the Town of Parrish, pursuant to 28 U.S.C. § 1367(c)(3). Therefore, the Court will remand this remaining claim to

state court.

## IV. Conclusion

For the forgoing reasons, Defendants' motion for partial judgment on the pleadings (doc. 27) is due to be granted and this action remanded. A separate closing order will be entered.

**DONE** and **ORDERED** on November 13, 2019.

L. Scott Coogler
United States District Judge

199455